JOURNAL ENTRY AND OPINION
{¶ 1} This is the second appearance of appellant, Richard Jacob, in this court in connection with his father's estate. John Jacob, his co-appellant and brother, was not party to the prior appeal. Two other brothers, who are equal heirs in the estate, are not party to the suit against the executor. In this appeal, Richard and John jointly cite as error the trial court's grant of summary judgment of their complaint against both William Fadel, as executor of the estate, and William Beyer, the executor's counsel. The executor was the decedent's nephew and is cousin to the heirs of the estate. Counsel to the executor is also the executor's law partner. The facts of the case were provided in the opinion from the prior appeal:
The decedent, John Jacob, died testate on July 24, 2003. The executor named in his will, his nephew, William Fadel, applied to administer his estate on October 14, 2003. The will was admitted to probate and Fadel was appointed executor.
An inventory and appraisal was filed January 30, 2004. It indicated that the estate was valued at $518,370.08, and was largely comprised of three pieces of real property, residential property located at 3237 Kersdale Road, Pepper Pike, Ohio, a medical center located at 3655 Lee Road, Shaker Heights, Ohio, and land located at 4420 Lee Road, Shaker Heights, Ohio.
On May 10, 2004, the executor moved the court for authority to take over management of the real estate. Appellant, together with his brother John Jacob, Jr., immediately filed a motion for removal of the executor on May 18, 2004.
On August 3, 2004, a magistrate conducted a hearing on the motion for authority to manage real estate. No transcript of this proceeding was made. The magistrate filed his report on August 19, 2004, recommending that the court grant the motion. The magistrate determined that two of the four heirs, Richard and John Jacob, had keys to the premises; the executor did not. Richard and John Jacob resided at the Kersdale Road property, and Richard Jacob used the medical center building as his business office. According to the magistrate, Richard Jacob stated at the hearing that he would not allow a real estate agent to appraise the properties until after all the matters before the probate court had been settled.
The magistrate determined that the estate's debts exceeded available funds. In order to generate the income to pay the debts, the executor would need to lease or sell the property. The magistrate concluded that to allow Richard and John Jacob to continue to use the properties without payment of rent or sale of the real estate would cause a loss to the other two heirs, and would unnecessarily delay the administration of the estate. He therefore recommended that the court grant the motion. The court overruled appellant's objections, adopted the magistrate's report, and granted the executor's motion to manage the real property.
 {¶ 2} On August 31, 2004, the magistrate held a hearing on the motion to remove the executor. A transcript of this proceeding was made and is included in the record. The magistrate's report filed October 4, 2004, determined that appellant had failed to provide clear and convincing evidence that the executor's actions were harmful to the estate, or that the executor should be removed for neglect of duty, incompetency, fraudulent conduct, or because the interests of the trust demands it. The magistrate further held that appellant provided no evidence that there were unsettled claims between the executor and the estate. Therefore, the magistrate recommended that the court deny the motion to remove the executor. The court overruled appellant's objections, adopted the magistrate's report, and denied appellant's motion to remove the executor. In re Estateof Jacob, Deceased, Cuyahoga App. No. 85640, 2005-Ohio-4998, ¶¶2-7.
 {¶ 3} This court in Jacob I held: "we cannot agree with appellant that the executor does not * * * require the immediate power to pay operating expenses, repair the premises, insure them, rent them, and if necessary evict the occupants, pending either transfer of the property to the heirs or court authorization to sell the property pursuant to R.C. Chapter 2127." Id. ¶ 22, emphasis added.
 {¶ 4} When this court or a higher court has made a ruling in a case, and the case is subsequently appealed again, the court's decision in the new appeal is controlled by "* * * the doctrine of the law of the case, which establishes that the `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe FittersUnion Local No. 392 v. Kokosing Constr. Co. (1998),81 Ohio St.3d 214, 218, quoting Nolan v. Nolan (1984), 11 Ohio St.3d 1,3. The executor's right to evict Richard and John, as confirmed by this court, is, therefore, our starting point in considering the assignments of error in the case at bar.
 {¶ 5} The complaint alleged that the executor's action in filing eviction against Richard and John was tortious and caused Richard, a licensed attorney, to expend $12,000 worth of time defending the case. Because the Shaker Heights Municipal Court granted Richard and John's motion to dismiss the eviction, they claimed, the executor was shown to have erred in filing the eviction action.
 {¶ 6} The complaint stated causes of action against the executor for breach of fiduciary duty and against both the executor and his counsel for malicious prosecution, intentional infliction of emotional distress, breach of fiduciary duty, and invasion of privacy. Without an opinion, the trial court granted the executor and his counsel's motion for summary judgment, after which Richard and John timely appealed, stating one assignment of error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANTS-APPELLEES AS GENUINE ISSUES OF MATERIAL FACTS EXIST AS TO ALL FOUR OF THE SEPARATE CAUSES OF ACTION STATED IN PLAINTIFFS' COMPLAINT, AND THERE ARE THEREFORE QUESTIONS OF FACT FOR A JURIES [sic] DETERMINATION.
 {¶ 7} Although Richard and John focus on several tangential issues in their appellate brief, we will confine our discussion to the merits of the summary judgment. Because we are reviewing a summary judgment, we need determine only whether Richard and John provided sufficient evidence to support their claims in the complaint and to establish a question of material fact.
 {¶ 8} The appellate court reviews a summary judgment de novo.Hillyer v. State Farm Mut. Auto Ins. Co. (1996),131 Ohio App.3d 172, 175. The appropriate test for that review is found in Civ.R. 56(C), which states that summary judgment may be granted under the following conditions: first, there is no genuine issue of material fact which remains to be litigated; second, as a matter of law, the moving party is entitled to judgment; and, third, a review of the evidence shows that reasonable minds can reach only one conclusion, which, when that evidence is viewed most favorably to the party against whom the motion was made, is adverse to the nonmoving party. Temple v. Wean (1977),50 Ohio St.2d 317, 327.
 {¶ 9} Initially, the party who seeks summary judgment has the burden of demonstrating the absence of any issue of material fact for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330. Once the moving party has satisfied that initial burden, however, the nonmoving party then has a similar burden of showing that a genuine issue of fact remains for trial. Dresher v. Burt
(1996), 75 Ohio St.2d 280. If any doubts exist, the issue must be resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
Malicious Prosecution
 {¶ 10} The first cause of action stated in the complaint alleges malicious prosecution in the filing of eviction against Richard and John.
"In order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings * * *."
Robb v. Chagrin Lagoons Yacht Club (1996), 75 Ohio St.3d 264,269, quoting Crawford v. Euclid Natl. Bank (1985),19 Ohio St.3d 135, 139.
 {¶ 11} Richard and John, relying on Trussell v. GeneralMotors Corp. (1990), 53 Ohio St.3d 142, claim that the element of seizure of property is not a necessary element to a malicious prosecution claim. In Robb, however, the Ohio Supreme Court expressly overruled that holding in Trussell and held that seizure is a necessary element for a cause of action in malicious prosecution. It is undisputed that Richard and John were never evicted from the home. Because the property to which they claimed a right, the decedent's home, remained in their possession throughout and after the eviction proceedings, they have not proven a necessary element for a cause of action in malicious prosecution. The trial court did not err in granting summary judgment to the executor and his counsel, therefore, on the malicious prosecution claim.
Intentional Infliction of Emotional Distress
 {¶ 12} The second cause of action in Richard and John's complaint sounded in intentional infliction of emotional distress.
 {¶ 13} The elements of a prima facie case of intentional infliction of emotional distress are:
that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.
Smullen v. Interfact Polygraphs, Inc. (Oct. 3, 1991), Cuyahoga App. No. 58722, 1991 Ohio App. LEXIS 4704, at *16, citing Pyle v. Pyle (1983), 11 Ohio App.3d 31, paragraph two of the syllabus.
 {¶ 14} Richard and John failed to provide adequate evidence to support the severity of their alleged mental anguish, the fourth element required in this claim. Although each provided an affidavit in which he testified to the distress he endured as a result of the eviction action, they submitted no other evidence to support the existence of this element to the court.
 {¶ 15} In Ohio, although it is not always necessary to provide medical proof of mental anguish resulting from malicious prosecution, a self-serving affidavit is not enough:
 {¶ 16} A plaintiff claiming severe and debilitating emotional injury must present some guarantee of genuineness in support of his or her claim, such as expert evidence, to prevent summary judgment in favor of the defendant. Knief v. Minnich (1995),103 Ohio App.3d 103, 658 N.E.2d 1072. In lieu of or in addition to expert testimony, a plaintiff may submit the testimony of lay witnesses acquainted with the plaintiff who have observed significant changes in the emotional or habitual makeup of the plaintiff. Uebelacker v. Cincorn Systems, Inc. (1988),48 Ohio App.3d 268, 276, 549 N.E.2d 1210.
 {¶ 17} Motley v. Flowers Versagi Court Reporters, Inc.
(Dec. 11, 1997), Cuyahoga App. No. 72069, 1997 Ohio App. LEXIS 5542, at *10-11. This court in Motley ruled that the plaintiff's self-serving affidavit, without more, was inadequate to sustain a summary judgment motion. Similarly, in the case at bar, Richard and John's affidavits alone are not sufficient to sustain the summary judgment motion against them on the issue of intentional infliction of emotional distress. The trial court did not err, therefore, in granting summary judgment on this cause of action.
Breach of Fiduciary Duty
 {¶ 18} The third cause of action in Richard and John's complaint alleges a breach of fiduciary duty on the part of Fadel only. They claim that Fadel sought relief to which he was not entitled, made false statements, and caused them humiliation.
A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care. And in negligence actions, we have long held that "`one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom.'" Stamper v. Parr-Ruckman Home Town Motor Sales
(1971), 25 Ohio St.2d 1, 3, 54 O.O.2d 1, 2, 265 N.E.2d 785, 786;Baier v. Cleveland Ry. Co. (1937), 132 Ohio St. 388, 391,8 O.O. 208, 209, 8 N.E.2d 1, 2.
 {¶ 19} Indeed, a fundamental principle of the law of all torts is that a legal right must exist and that this right must be violated in order to warrant redress.
"[T]here can be no redress for some claimed tortious act unless the party (or parties) sought to be charged was guilty of some act that the law regards as wrongful." Speiser, Krause Gans, The American Law of Torts (1983) 34, Section 1:10.
Strock v. Pressnell (1988), 38 Ohio St.3d 207, 216-217.
 {¶ 20} In their brief in opposition to the summary judgment motion, the actions that Richard and John allege breached the executor's fiduciary duty to them were the motion in probate court for authority to manage the estate property and the eviction action. As this court held in Jacob I, the executor was vested with the power to manage the estate's real property, and this power included "if necessary evict[ing] the occupants."Jacob I, ¶ 22.
 {¶ 21} Richard and John confuse the executor's duty to the estate with his duty to them as two of the four heirs to the estate. They argue that because they were two of the heirs who were bequeathed the property they occupied, their right to occupy it was superior to the executor's right to manage it in a way most beneficial to the estate. The executor's duty, however, is to ensure that the estate is preserved for the benefit of all the heirs equally. In Jacob I, therefore, this court upheld the magistrate's conclusion "that to allow Richard and John Jacob to continue to use the properties without payment of rent or sale of the real estate would cause a loss to the other two heirs, and would unnecessarily delay the administration of the estate." Id. ¶ 6.
 {¶ 22} Because the executor's duty was to the estate, not to specific heirs exclusively, he did not breach his duty when he filed the eviction action against Richard and Jacob. The trial court did not err in granting summary judgment on this cause of action.
Invasion of Privacy
 {¶ 23} The fourth cause of action Richard and John allege is for invasion of privacy. They cannot prevail on this cause of action. "It is by now well-established in Ohio that an attorney may not be held liable by third parties as a result of having performed services on behalf of a client, in good faith, unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." Simon v. Zipperstein (1987), 32 Ohio St.3d 74, 76. In this case the Ohio Supreme Court further ruled that "appellee's complaint set forth no special circumstances such as fraud, bad faith, collusion or other malicious conduct which would justify departure from the general rule. In addition, privity was lacking since appellee, as a potential beneficiary of his father's estate, had no vested interest in the estate." Id. at 76-77.
 {¶ 24} Similarly, in the case at bar, Richard and John had no vested interest in the estate while it was being probated. Richard and John, therefore, cannot hold the executor liable for his actions in filing the eviction notice absent fraud, bad faith, collusion, or malice, none of which Richard and John have proven. Rather, the executor was merely proceeding lawfully in performing his duties. Accordingly, he cannot be found liable for invasion of privacy.
 {¶ 25} Because the trial court did not err in granting summary judgment on all the causes of action in the complaint, appellant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover from appellants costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, J., and Corrigan, J., concur.